### ROSS *v.* HARTFORD FIRE INSURANCE COMPANY.

1. ANIMALS—INSURANCE—CONSENT TO DESTRUCTION—HORSE—NAVIC-
ULAR ARTHRITIS.

   Finding of trial court, in suit to compel defendant insurance
   company to consent to the destruction of plaintiff's mare whose
   life had been insured for $3,000 that defendant had not acted
   unreasonably in refusing such consent *held*, proper, where a
   *bona fide* dispute existed as to the necessity, for humanitarian
   considerations during term of policy, of destroying the horse
   which was suffering from navicular arthritis.

2. INSURANCE—ANIMALS—LIFE POLICY.

   Life insurance policy on mare *held*, not to cover situation un-
   equivocally requiring euthanasia during term of policy for
   humanitarian reasons, where injury sustained to leg is found
   to have resulted in navicular arthritis and limitation of use
   but not a high degree of pain.

3. ANIMALS—DESTRUCTION OF HORSE FOR HUMANITARIAN REASONS—
BURDEN OF PROOF—EVIDENCE.

   Evidence adduced by owner of mare whose front leg had been so
   injured as to result in incurable navicular arthritis *held*, insuffi-
   cient to sustain plaintiff's burden of proof that the horse should
   be destroyed for humanitarian reasons during term of life
   insurance policy.

KAVANAGH, C. J., and BLACK, J., dissenting.

Appeal from Wayne; Piggins (Edward S.), J.
Submitted November 7, 1963. (Calendar No. 62,
Docket No. 50,040.) Decided March 5, 1964.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 29, 29A Am Jur, Insurance §§ 301, 1364.
   Animal or livestock insurance: risks and losses covered.   29 ALR2d
   790.

Bill by Earl D. Ross against Hartford Fire Insurance Company, a Connecticut corporation, to compel consent to destruction of a horse and payment of insurance thereon. Bill dismissed. Plaintiff appeals. Affirmed.

*Earl D. Ross* (*Louis Rosenzweig,* of counsel), *in propria persona.*

*Rodman C. Moesta,* for defendant.

KELLY, J. This is an appeal from the circuit court's dismissal of appellant's bill in equity to compel defendant insurance company to consent to the destruction of a 9-year-old mare named "Contemporary" and to pay appellant, insured, $3,000 in accordance with the life insurance policy issued by appellee to appellant.

Appellant purchased the horse in May, 1959, and insured it with the appellee "against loss by death from natural causes, to include death from illness or disease or accident or fire or lightning, occurring within the term of this policy of any or all animals described hereunder, * * * except as herein otherwise provided, limited and excepted."

The policy contained the following "exception to payment":

"Against loss caused by intentional destruction of any animal or animals insured hereby within the term of this policy, but only and not otherwise when such loss caused by the intentional destruction occurs under either of 2 circumstances, to-wit:

"1. Where complete fracture of a bone or bones occurs by actual injury and where because of such fracture immediate destruction is necessary and a certificate from a licensed veterinarian certifying that such destruction was immediately necessary shall have been obtained prior to the destruction of such animal or animals.

"2. Where this company shall consent to such destruction."

Appellant renewed this life insurance policy from year to year, the last renewal being in May, 1961. In June, 1961, the horse injured her right front leg, and, as a result this injury, developed a bone condition known as "navicular arthritis."

In January, 1962, appellant notified appellee of the horse's condition and asked the consent of appellee for destruction of the horse. Appellee refused to give its consent to such destruction under part 2 of the above provision respecting payment. Appellant then filed his bill of complaint to compel appellee's consent and for payment after destruction.

At the trial, held in March, 1962, appellant's witness, Dr. Lickfeldt, stated that he could not testify as to Contemporary's present condition as he had not seen the horse for over 7 months; that he made 2 examinations during the week of July 12th; that after the first examination he did not recommend the horse be destroyed but only that she not be ridden; that he made the second examination the same week because plaintiff "wanted me to recommend a disposition with this animal since we were not allowed to use it"; that the horse showed no signs of pain as she stood in the box stall; that it was only after taking her out and exercising her for 5 minutes that she showed pain by nodding her head and favoring her front leg; that he diagnosed it as a navicular disorder, which would be similar to arthritis in a human being; that this is not an unusual condition in horses and there are methods to relieve the pain, such as an injection of cortisone, which relieves pain up to 5 months; that he does not recommend the cortisone injection "because animals frequently stumble that have this condition and we're taking into consideration the individual that's riding the animal."

Appellant's other veterinarian witness, Dr. Rooker, testified that he examined Contemporary at 7 o'clock in the morning of the same day he testified; that as he observed the horse in her stall she "was standing at rest there, looked normal"; that she appeared in good health, sound, and didn't appear to be in any pain; that it was after he "used a lunge line on a long rope and exercised the horse" and used a "hoof tester" and applied pressure to her foot that he localized the trouble to the foot; that it was in the area of where the navicular pain would be, where she showed pain; that he has used the cortisone treatment on horses and it could be used to give temporary relief to the horse from arthritic pain.

Appellee's 2 veterinarian witnesses, Drs. Keeran and Gibson, testified that their examination of the horse in January, 1962, showed little or no lameness after 10 to 20 minutes of exercise and that the horse was not suffering from any pain severe enough to justify euthanasia. Dr. Keeran testified that he examined the horse approximately 1 month before trial and that at that time the horse's condition had not changed since his first examination of the animal in September, 1961.

Appellant contends the court erred in not finding that "'Contemporary' should be destroyed for humanitarian reasons because of its incurable navicular conditions causing it constant pain and suffering," and "in refusing to enter judgment for plaintiff."

Appellant places particular emphasis on *Butler v. Hartford Live Stock Insurance Co.*, 261 Minn 293 (112 NW2d 50), in which case a life insurance payment provision identical to that at issue in this case was involved. There the trial judge instructed the jury as follows (p 296):

"Therefore, if by a fair preponderance of the evidence you find that the mare was here injured in such a manner as to cause it a high degree of pain and suffering which would to a reasonable certainty continue for such a long time as to make it inhumane to keep the mare for further treatment and the advice of the veterinarian was that for humane reasons and because in his opinion the mare had sustained such a permanent and incurable injury as to render her useless for any purpose and that she should be destroyed, then your verdict should be for the plaintiff for $3,500 which it was admitted the mare was worth at the time of her injury."

The Minnesota supreme court held on appeal that such instruction was not erroneous, but the court emphasized that its holding was based on the fact that the instruction required a finding that the mare was injured in such a manner as to cause a high degree of pain and suffering which would, to a reasonable certainty, continue for such a long time as to make it inhumane to keep the mare for further treatment.

Appellee contends that the issue involved is whether its refusal to consent to the destruction of the horse was arbitrary or unreasonable. Appellee relies on *Wilson* v. *Hartford Livestock Insurance Co.* (CCA 5), 193 F2d 752, which case also involved the same type of life insurance policy. The court in *Wilson* stated (p 756):

"We are not now prepared to, and do not, hold that under the terms of the policy the right of the insurer to refuse to grant consent to the voluntary destruction of an animal for humane reasons is so absolute that any and all judicial inquiry into the grounds for refusal is precluded without regard to the circumstances surrounding the failure to give consent. In this case it is not necessary that we do so. On the other hand, we cannot uphold the con-

tention of the appellant which implies that a dispute as to the existence of humane consideration for the voluntary destruction of an animal affords a proper basis for a finding of fact and law that a refusal to grant consent is arbitrary or unreasonable. * * *

"There was ground for, and the existence of, a *bona fide* dispute as to whether voluntary destruction of the horse was required by 'humane consideration.'"

In the instant case, the trial court in rendering its opinion stated that the real issue in this case is whether the defendant insurance company acted arbitrarily or unreasonably in refusing to consent to the destruction of the horse, and determined that it had not so acted under the circumstances. The trial court found that defendant sent 2 veterinarians and its own special agent to examine the horse and they determined that it was not necessary for humanitarian reasons to destroy the animal. The trial court, relying on the reasoning in the *Wilson Case, supra,* thus found that a *bona fide* dispute existed concerning the necessity of destroying the horse (since appellant's veterinarian had testified that the horse should be destroyed) and that, therefore, defendant insurance company did not act unreasonably.

We agree with the trial court's conclusions, but add 2 additional reasons why error was not committed in refusing to enter judgment for plaintiff:

1. The policy in question is a life insurance policy and not a health and accident policy. The language of the policy in respect to payment is clear and unambiguous. It agrees to pay upon the death of the horse by intentional destruction under either of 2 circumstances, namely: (a) Where destruction is necessary because of a fractured bone; or (b) Where the insurance company shall consent to such destruc-

tion. It does not cover the situation existing in this case.

2. Plaintiff did not sustain the burden of proof in establishing that Contemporary should be destroyed for humanitarian reasons.

Appellant's proof merely shows that Contemporary suffered from pain after she had been exercised for 5 minutes and that that pain could be relieved by treatment. The proof fell far short of *high degree of pain and suffering* as required in the case appellant relies upon (*Butler* v. *Hartford Live Stock Insurance Co., supra*).

The insurance policy was due to expire in May, 1962, approximately 2 months after date of trial and so proof that the horse's arthritic condition would progressively grow worse and that at some distant time the horse would experience pain without exercising could not be pertinent to defendant's policy liability.

In contrast to defendant's witnesses' definite statements that the horse's condition did not call for destruction is the court's question to plaintiff's Dr. Rooker:

"If you were asked to make a recommendation as to the future of this animal, what recommendation would you make?"

and Dr. Rooker's answer:

"Again, I would recommend that the mare—it's hard to say. If it were my horse I would probably say to euthanize the horse,"

and the question to plaintiff's Dr. Lickfeldt:

"And it is still your opinion this horse should be killed today?

"*A.* I am suggesting euthanasia on this animal."

Plaintiff's bill of complaint stated that during June, 1961, the "horse injured her front leg caus-

ing permanent injury to same and that said injury cannot be healed or corrected," and that plaintiff "furnished said defendant with veterinarian's certificates indicating that said horse would have to be destroyed, because of this condition," and "that because of defendant's refusal the plaintiff is suffering great expense in the care and maintenance of said horse."

There was no claim in the bill of complaint that under the terms of the policy the horse should be destroyed for humanitarian reasons because of its incurable navicular arthritic condition or because of constant pain and suffering. Plaintiff's proofs did not sustain the contention that the animal should be destroyed for humanitarian reasons. ·

Affirmed. Costs to appellee.

DETHMERS and O'HARA, JJ., concurred with KELLY, J.

SOURIS, J. (*concurring in affirmance*). I concur in affirmance.

I view the evidence, as did the chancellor before whom it was introduced, as preponderating persuasively in favor of plaintiff's claim that his animal should have been destroyed for humanitarian reasons. Nonetheless, I do not believe we would be warranted on this record in finding defendant liable under its policy for its refusal to consent to the animal's destruction. Such liability arises, under the terms of the policy here involved, quoted in Justice KELLY's opinion, only upon persuasive proof, lacking here, that defendant's refusal of consent was arbitrary or unreasonable.

Just as we would be unwarranted in saying, as I read Justice KELLY's opinion to infer, that defendant had an absolute right to grant or withhold its consent under the terms of the policy, so we would

be unwarranted in saying' that defendant' should have given its consent because we happen to be persuaded from the evidence that the animal's destruction was necessary for humanitarian reasons. The policy language supports neither proposition. Its proper interpretation requires only that defendant exercise its judgment in good faith in determining whether to grant its consent to such destruction. Having exercised such judgment in good faith, whatever its decision, defendant has fulfilled its obligation and the fact that others reasonably may have reached a different decision cannot affect its liability. What was said in *Wilson* v. *Hartford Livestock Ins. Co.* (CCA 5, 1952), 193 F2d 752, 756, concerning a similar policy clause, is equally apt here:

"We remark that we find in the language of the policy no basis for holding that the insurer subjected itself to liability in case a jury should find it made a mistake in judgment in evaluating and determining 'humane consideration.' The existence of such consideration necessarily involves to a high degree the exercise of judgment upon a matter as to which reasonable minds might well differ."

For the foregoing reasons only, I concur in affirmance.

SMITH, J., concurred with SOURIS, J.

BLACK, J. (*dissenting*). Where as here we are given a choice between 2 competing and possibly divergent lines of authority, one humane and the other callous, the choice is easy for me. Note how the *Wilson Case* (*Wilson* v. *Hartford Livestock Insurance Co.* [CCA 5], 193 F2d 752), relied upon by Justice KELLY as authority for affirmance, was considered in the presently quoted *Butler Case*.

This is a chancery case. We hear it *de novo*. I am convinced, as the chancellor said he was by "that

preponderance of evidence," that the horse should have been destroyed "for humane reasons."* I am convinced also, as the chancellor said he was not, that the defendant's refusal to consent to destruction was done simply to avoid liability for heartlessly assigned reasons furnished by hired witnesses. The chancellor's aforesaid finding that the horse should have been destroyed, "for humane reasons," is legally akin to the jury's finding in the *Butler Case.* That finding calls for a decree granting rather than denying relief to plaintiff.

See annotation, "Animal or livestock insurance: risks and losses covered," 29 ALR2d 790, and *Butler* v. *Hartford Live Stock Insurance Co.* (1961), 261 Minn 293 (112 NW2d 50). The following quotation from *Butler* is applicable here. I would apply it accordingly (p 298; pp 53, 54 NR citation):

"While a policy of the kind involved here does not permit destruction of an animal without the consent of the company, except for a fracture as set forth in the policy, the consent cannot be withheld arbitrarily and destruction without consent will not preclude recovery where a jury finds that the animal's suffering had become so great that it would have been inhumane to permit it to live. See *Rosen* v. *Underwriters at Lloyd's of London* (ED Pa), 100 F Supp 825. Where there is time, of course, the insurer must be given an opportunity, as it was here, to inspect the animal and either give or withhold its consent. But irrespective of whether the company had an opportunity to inspect, if the jury finds destruction was necessary as a humane act, the failure to consent is arbitrary and will not be a bar to recovery."

To adopt *Butler's* rule is to discourage inhumanity. That is enough to direct our course. I would

---

* See appendix for pertinent and connected quotation of the chancellor's opinion.

reverse and remand for entry of decree in accordance with the prayer of plaintiff's bill. Plaintiff should have costs.

Kavanagh, C. J., concurred with Black, J.

Adams, J., took no part in the decision of this case.

### APPENDIX

(Quotation of complete conclusion of Judge Piggins' opinion)

"Frankly, this court is perhaps more impressed with the testimony of the experts offered here by the plaintiff than by the defendant, and as I have already pointed out, if the question were only 'has the plaintiff sustained the burden of proof in establishing that this animal should be destroyed for humane reasons', the court would be inclined to agree with the plaintiff. I am putting that statement in here for reasons which may be necessary for both counsel in the event an appeal is considered, because I don't think that is the real issue. Even though plaintiff has sustained that preponderance of evidence, it does not relate to the principal issue. This court cannot in good conscience say that the defendant insurance company has acted arbitrarily. It dispatched 2 veterinarians to examine the horse, it dispatched its field manager or special agent to look at the horse, to investigate, took movies of the horse in action. It seems to this court that although these medical experts differ and although this court might be inclined and would be inclined to lean toward the testimony of the plaintiff's medical experts, it still presents a question upon which reasonable minds might differ and it still creates a bona fide dispute.

"Under the law this court has no alternative, as a result of making that finding, but to deny plaintiff's request for relief, and a decree may be so entered."